ARMAND J. GARREAU *et al. vs.* BOARD OF REVIEW OF THE CITY OF NEWPORT.

JANUARY 14, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Condon, J.   This is a petition for certiorari to review the action of the board of review of the city of Newport in denying petitioners' application for a change from one nonconforming use in a residential district to a different nonconforming use which petitioners alleged to be in the same zoning category.   Upon being served with a citation to appear and show cause why the writ of certiorari should not issue, respondents waived issuance thereof and made return of a certified copy of their records in the matter in accordance with general laws 1938, chapter 342, §8.

Those records disclose that petitioners applied directly to the board for permission to use "a concrete building located on Bedlow Avenue at the intersection with Malbone Road and zoned as a residential district for research and development engineering."   The application did not state whether it was for an exception under the provisions of the zoning ordinance or for a variance from the requirements of the ordinance because of unnecessary hardship. Appended to the application, however, is a letter signed by Armand J. Garreau, one of the petitioners, stating certain reasons why a change of use has become necessary and also that the proposed use is in the same zoning category as the present use.

From a reading of the application and the letter it is not at all clear whether the petitioners are invoking the appellate jurisdiction of the board or their jurisdiction to grant, in their discretion, an exception or variance from the requirements of the zoning ordinance. See *Heffernan* v. *Zoning Board of Review*, 49 R. I. 283; *Harrison* v. *Zoning Board of Review*, 74 R. I. 135; *Caldarone* v. *Zoning Board of Review*, 74 R. I. 196. Counsel for petitioners sought to clarify this obscurity by stating at the outset of the hearing before the board that petitioners had applied to the board not because they required permission under the ordinance but to avoid "unnecessary friction" with their neighbors by showing at a hearing that the proposed use was proper and reasonable. He contended that petitioners had "a perfect right to proceed to do what" they intended "to do without coming to the Board at all." Taken together, the application, letter and statement of counsel still do not make clear what authority of the board petitioners were invoking.

At the hearing before the board one neighboring landowner was represented by counsel who protested the granting of petitioners' application and further moved to dismiss it on the ground that it sought no relief within the jurisdiction of the board to grant. The board denied the motion substantially on the grounds that it was a mere technical objection and that the hearing could proceed on the theory that the application was addressed to their discretion to grant permission to petitioners to change from one nonconforming use to another in the same zoning category. Thereupon evidence was presented by petitioners in favor of the application and by a number of protesting landowners in the neighborhood against it.

At the conclusion of the evidence the same protestant who moved to dismiss the application at the opening of the hearing again moved to dismiss it on the grounds that petitioners Armand J. Garreau and Nona F. Garreau had conveyed their title to the M. & L. Die & Tool Co., Inc.

and that the other petitioner M. & L. Engineering Corporation had no existence as a legally organized corporation. The evidence showed that such name had been signed to the application by the officers and director of the M. & L. Die & Tool Co., Inc. and they testified that they also used the name M. & L. Engineering Corporation as a trade name. The board treated this name on the application as in the nature of a misnomer for M. & L. Die & Tool Co., Inc. which was the actual prospective purchaser of the premises in question from the Garreaus, the owners thereof at the time the application was filed. At the time of the hearing before the board title had passed to the tool company and Armand J. Garreau had become therein a shareholder and a director. The board held on the above evidence that the errors complained of were merely technical; that they had been satisfactorily explained; and that no one was prejudiced thereby. They therefore denied the motion to dismiss.

Upon consideration of the merits of the application they held that the change of use requested was too radical. While they expressed some doubt as to the extent of their power to authorize in a residential district a change from one nonconforming use to a different nonconforming use they held that they had the power to do so in the case of a "non-conforming use that does not change the characteristics of the use * * *." To illustrate their decision they said: "We believe that a change from a quiet handicraft use to a blast furnace should not be granted. The premises in question were designed, built and used for a carriage paint shop. Painting carriages was a quiet skill and during the 'gay nineties' when there was rivalry in exhibiting highly decorated equipages could almost be called an art. The storage of equipment is ordinarily a quiet business with only occasional activity as equipment is housed or put into operation. To change the use of a building from such operations to its continuous activity as a manufacturing plant seems to this Board a non-conforming use suitable

only for a commercial or industrial zone and not suitable even in a business zone. The old non-conforming use would not have been objectionable in a business zone."

Having thus exercised the power they claimed to have to permit a change of nonconforming use if, in their opinion, the proposed new use was of substantially the same character, and having found that a light manufacturing plant was not a use of the same character as a carriage paint shop or shop for the storage of automobiles or well-drilling equipment, they decided petitioners were not entitled as of right to make such change. They then went on to consider the application as one in the nature of a request for a variance from the requirements of the ordinance on the ground of unnecessary hardship and denied it for the reason that petitioners had failed to show any "unreasonable hardship" would result to them in the use of the premises in question if their application were denied, and also because the board were of the opinion that the proposed use "would seriously depreciate the value of the neighboring residential property * * *."

Petitioners contended in this court that the board erred in not granting their application because they were entitled as of right to use their premises as they chose so long as the new nonconforming use was in the same zoning category and not a lower one. They further argued that the proposed use was not manufacturing but the rendering to manufacturers of a retail engineering service in the development and design of special small tools. They claim such service is comparable in character to a carriage painting and incidental repair service which was carried on in the building by their predecessors in title prior to the enactment of the zoning ordinance.

At the time of that enactment the building was temporarily vacant. Later it was used for the storage and painting of automobiles and also for the storage of well-drilling equipment by a company engaged in that business. In this connection petitioners further contend that none of

those uses is expressly classified in any of the zones established by the ordinance. They argue that in these circumstances the uses might properly be considered as appropriate to either a business district or commercial "A" district and if so the proposed use was an appropriate nonconforming use of a like character to the painting and incidental repair of carriages or the storage and painting of automobiles. In support of that contention they point out that the city of Newport issued licenses for the use of the building in 1930, 1931, 1934 and 1937 as a garage, and that the zoning ordinance of 1939 classifies a public or private garage as an appropriate use in a business district. Along that line they argue further that, as the work of repairing, sanding and painting carriage bodies and the work of painting and removing grease from automobile bodies was carried on there without objection, such uses may well be considered as appropriate to a commercial "A" district.

Upon consideration of the record before us we are of the opinion that the determination of none of the above questions is called for at this time. Antecedent to them is the question whether the board is vested with the power, in addition to the powers expressly conferred upon them by G. L. 1938, chap. 342, §8, subpar. b. and c., to authorize petitioners to change from one nonconforming use to a different nonconforming use even though such different use may be in the same zoning category as the existing use. As that question is one of jurisdiction of which we are apprised by the record we are bound on our own motion to consider it.

We are unable to find any authority in the statute for the exercise of such original jurisdiction by zoning boards of review. Their powers are expressly set out in said §8, subpar. a., b. and c. Under subpar. b. and c. such boards may allow a departure from the requirements of the zoning ordinance which they are set up to administer by granting exceptions thereunder upon a proper showing or a variance therefrom under certain specified conditions. In either instance the application invokes the exercise of the board's

discretion and does not present to them a claim of right by the applicant. See *Heffernan* v. *Zoning Board of Review, supra*. Only by appeal under §8, subpar. a., is a claim of right properly before the board for determination. In the instant case petitioners have not appealed to the board from an adverse decision of any administrative officer and they expressly state they are not invoking the board's discretionary powers. Apparently they nevertheless believe that their application to the board, even though it is not an appeal under §8, subpar. a., from the decision of an administrative officer, raises a claim of right to do the thing they propose to do. In this they are mistaken.

There is only one way in which the board could entertain this particular application for the purpose of determining whether petitioners are entitled to relief and that is to interpret it liberally as in effect an application for a variance. This the board did and then found that petitioners' evidence failed to satisfy them that they should exercise their discretion and allow a variance from the requirement of the ordinance. Assuming that the board was at liberty to treat the application in this manner, we cannot say after reading the evidence that they abused their discretion in denying it. In making this assumption and thus reviewing the board's action it must be understood that we do not express an opinion as to the alleged right of the petitioners, without the board's permission, to use the premises in the manner they propose as an appropriate nonconforming use. Under the application that question was not properly before the board and, in the present proceedings, is not before this court for decision.

The petition for certiorari is denied and dismissed, the decision of the respondent board is affirmed, and the papers in the case which have been certified to this court are ordered sent back to the respondent board.

*Dannin & Dannin, Max Levin,* for petitioners.

*Cornelius C. Moore, Salvatore L. Virgadamo,* for remonstrant Lewis G. Morris.

*Alexander G. Teitz,* City Solicitor, for respondent.